On Application for Rehearing.
The original opinion in this case maintained that cemetery lots did not part with the character of immovable property, because devoted to burial purposes. Under our law whatever its uses, land is immovable. The Oode completely effaces the distinction of “ things holy, sacred and religious.” Civil Code, 452, 456; McEnery vs. Pargoud, 10 An. 497; Burke vs. Wall, 29 An. 46. The opinion, therefore, necessarily recognizes the title of Mrs. Dauphin, the legatee of her husband, to the lots bought by him and left at his death to her.
The opinion affirmed, of course, there could be no servitude, usufruct or other modification of ownership of burial lots. There is no servitude, in the legal sense, established on property for the interment of the dead, and the usufructs of the Oode are for the profit and advantage of the living. There was also the recognition in the opinion of the prohibition in the Oode enforced in our jurisprudence of every species of tenure of property except ownership *1222 in its fullest significance, and its modifications carefully prescribed by the Code. Arts. 488, 490 et seq.; 533 et seq.; 646 et seq.; State vs. McDonogh’s Succession, 8 An. 251; Succession of McCann, 48 An. 145.
The court, then, in this case is dealing with lots, title to which is in the defendant with no form of subdivision of ownership vested in plaintiff, or in any, save the defendant. Consistently with her title and the'absolute exclusion by the law of all tenures of property, except those recognized by the Code, the inquiry presented itself how could this court sustain that right the plaintiffs assert to these lots? In what part of the Code is that to find a place? If admitted to the extent asserted, must it not be deemed simply and only of our creation? It is the claim of plaintiffs that Dr. Dauphin, under whose will his widow, the defendant, inherits these lots, by words, letters and conduct quite as expressive as language promised that the tomb he erected on the property should be the final resting place for the remains of his friend, Dr. Choppin, and the remains of the deceased members of the family, as well as for the remains of other members of the connection .when their turn came to die. This right asserted at present and for the-future, is to subsist alongside of the title the Code recognizes to the property. If admitted, the right is purely of judicial creation. The asserted right carries the use of ownership applied to burial lots, but is entirely foreign to our system.
We were therefore thus confronted in our consideration of this case, with the legal title to this property in the defendant, and another species of interest or form of title, claimed to have been brought into existence by the declarations and conduct of Dr. Dauphin in his lifetime, but not within the recognition of the Code. We reached and adhere to the conclusion that.the right, at least to the extent asserted, could not be allowed.
But we found there was a basis consistent with our law on which the plaintiff was entitled to part of the relief sought. In the lifetime of Dr. Dauphin the remains of Dr. Choppin and of the deceased members of the family had been placed in the tomb under the promise on Dr. Dauphin’s part they should remain there. In our view, wholly irrespective of any issue of title, neither Dauphin in life or his legatee after his death could recall that promise and require the removal of remains deposited on the faith of this pledge of final sepulture. The petition attributed to defendant the design of re *1223 moval of the remains, a purpose never contemplated by Dr. Dauphin and disavowed for his widow in the argument in this court. Still, the plaintiff had issued the injunction on the belief of its necessity, not without reasonable cause, as it appeared to plaintiff. Our purpose was to confine the relief to maintaining the injunction against removing the remains. The decree of the lower court affirmed by us goes beyond the relief proposed in our opinion, and on this re - hearing we are asked to make the decree conform to the opinion. After the additional argument on this application and on the maturest reflection we remain of the conviction that perpetuating the injunction against disturbing the remains now in the tomb must be the limit of the decree.
It is therefore ordered, adjudged and decreed that our former judgment in this case be set aside and annulled, and it is now ordered, adjudged and decreed that the judgment of the lower court, in so far as it enjoins and prohibits the removal from the tomb of the remains of Dr. Ohoppin, Mrs. Eliza Ohoppin, Arthur V. Ohoppin and Amedee Ohoppin, now in the tomb, be affirmed and the injunction decreed to be perpetuated, to that extent: it is further ordered and adjudged that in all other respects the judgment of the lower court be and is hereby avoided, annulled and reversed, and that appellees pay costs of appeal; those of the lower court to be borne by the appellants.